UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS NEW YORK, ZARMEEN AZAM, *and* SHAJNIN HOWLADER,<br><br>Plaintiffs,<br><br>-against-<br><br>CITY OF NEW YORK, ASSISTANT CHIEF AT PATROL RUEL R. STEPHENSON, SERGEANT JOSEPH M. SPALDING, *and* NEW YORK POLICE DEPARTMENT OFFICERS JOHN DOE #1–10,<br><br>Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT AND JURY DEMAND** |

The Council on American-Islamic Relations New York ("CAIR-NY"), Zarmeen Azam, and Shajnin Howlader, by and through their attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, for their Complaint allege as follows:

## INTRODUCTION



1.     New York Police Department Assistant Chief Ruel R. Stephenson clutched

Zarmeen Azam's throat with one hand, strangling her with the fabric of her hijab. With his other

hand, he swung his baton at the protestors trying to help her. As Assistant Chief Stephenson dragged her along the ground for several long minutes, Ms. Azam could not breathe. She thought she would die. She tried to plead with Assistant Chief Stephenson to loosen his stranglehold, but she could not catch her breath. Ms. Azam could not understand why she found herself gasping under the pressure of his fist: seconds earlier, she had been peacefully protesting, when Assistant Chief Stephenson whirled around, pushed through the crowd, and grabbed her without cause.

2.     Ms. Azam was not the first protester the police nearly strangled that day. Around the same time Assistant Chief Stephenson set upon Ms. Azam, Sergeant Joseph M. Spalding had assaulted another woman at the protest, Shajnin Howlader, by pulling on her hijab too. Sergeant Spalding had looked Ms. Howlader directly in the face and, without any cause, yanked on Ms. Howlader's hijab. As the hijab was coming off her head, it tangled and caught around her throat, cutting off her ability to breathe or speak. She was in such pain from the pressure on her throat that, when an officer pepper sprayed her, she did not even register it.

3.     These incidents are not an aberration. They are examples of what appears to be a growing police practice of forcibly and publicly removing women's hijabs at protests as a form of brutal crowd control through intimidation and religiously targeted violence. CAIR-NY's mission—to enhance the understanding of Islam, protect civil rights, promote justice, and empower Muslims—has been directly harmed by this policy.

4.     The New York Police Department practice of forcibly and publicly removing women's hijabs at protests violated Ms. Azam and Ms. Howlader's constitutional free speech rights, religious rights, and rights to bodily integrity. This action seeks damages for these violations to compensate them for the severe physical and emotional damage, and to compensate CAIR-NY for impairment of its mission and core activities.

## PARTIES

5.    Plaintiff CAIR-NY is a nonprofit organization based in New York County and serving the Muslim community across New York state. CAIR-NY is organized under the laws of New York, with its principal place of business in Manhattan. CAIR-NY's primary objective is to enhance the understanding of Islam, protect civil rights, promote justice, and empower Muslims. CAIR-NY accomplishes this objective through a variety of means, including legal advocacy, education, media relations, civil engagement, and grassroots mobilization throughout the region in which it operates, including in the Southern District of New York. CAIR-NY's core initiatives include supporting victims of hate crimes and discrimination, ending unjust profiling and surveillance, countering Islamophobic rhetoric through media relations, educating New Yorkers through workshops and publications, championing fair and just legislation and policies, and promoting community activism and civic engagement.

6.    Plaintiff Zarmeen Azam is a citizen of New York and for all relevant times she resided in Yonkers, New York.

7.    Plaintiff Shajnin Howlader is a citizen of New York and for all relevant times she resided in Jamaica, New York.

8.    Defendant Ruel R. Stephenson, Assistant Chief at Patrol Borough Manhattan North, at all times relevant hereto, was employed by the New York Police Department ("the NYPD"), acting in the capacity of agent, servant, and employee of the City of New York, and within the scope of his employment. He is sued in his individual and official capacities.

9.    Defendant Joseph M. Spalding, Sergeant at Strategic Response Group 2 Bronx, at all times relevant hereto, was employed by the New York Police Department ("the NYPD"),

acting in the capacity of agent, servant, and employee of the City of New York, and within the scope of his employment. He is sued in his individual and official capacities.

10.     At all relevant times, Defendants NYPD Officers John Does # 1–10, names and shield numbers unknown to Plaintiff but known to the NYPD, were police officers in the NYPD, acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of their employment. They are being sued under fictitious names because their names are unknown to Plaintiff at this time. They are sued in their individual and official capacities.

11.     Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York and is located within the confines of the Southern District of New York. The NYPD is an agency of the City. At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD (and regulations of the NYPD Patrol Guide), and for ensuring that NYPD personnel obey the laws of the United States and of the State of New York.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This case arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

13.     This Court has supplemental jurisdiction over New York State law claims pursuant to 28 U.S.C. § 1367.

14.     The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims occurred in the District.

## JURY DEMAND

15.     Plaintiffs demand a trial by jury in this action.

## FACTUAL ALLEGATIONS

16.     Ms. Azam and Ms. Howlader (together, "Individual Plaintiffs") wear a hijab,[1] pursuant to their Muslim faith.

17.     Ms. Azam and Ms. Howlader, like many other Muslim women who cover, view wearing the hijab as a mandatory aspect of Muslim identity and faith to fulfill the commandments of modesty and devotion. The practice of covering entails wearing one's hijab—a headscarf that covers one's hair, ears, neck and part of one's chest but leaves the entire face exposed—at all times, whether at home or in public, when in the presence of men who are not part of one's immediate family ("*mahram*").

18.     The hijab is core to Ms. Azam's and Ms. Howlader's identities. It is an essential part of who they each are.

19.     Being forced to remove one's hijab in public, particularly in the presence of men who are not one's *mahram*, is a profound defilement of the wearer's sincerely held religious beliefs and a violation of her religious practice. Women who wear a hijab experience being made to remove it in public as a sexual violation and a violation of their privacy not dissimilar from being strip searched in front of strangers.

---

[1] Use of the term "hijab" in the instant Complaint refers to a garment worn by many Muslim women in various parts of the world. In Arabic, the word "hijab" derives from the word "hajaba," sometimes translated as to hide or screen from view or to cover. Wearing a hijab is also known as "covering." Neither Ms. Azam nor Ms. Howlader wear a niqab, or a face veil.

20.     The NYPD has recognized the religious harm of requiring removal of religious head coverings. Pursuant to a settlement it reached on October 26, 2020, the NYPD revised its policy to allow arrestees to retain religious head coverings for booking photographs with limited exceptions where specific evidence would be obscured by a head covering or where a person was arrested outside of their home without a head covering.[2]

21.     Despite this recent policy change to accommodate religious head coverings in the context of custodial photographs, NYPD officers have violently removed women's hijabs with potentially lethal force as a crowd control tactic at protests.

**_The August 14, 2024 Protest_**

22.     On August 14, 2024, a protest began outside the "New York City Kickoff" fundraiser event attended by elected New York Democrats—including New York Governor Kathy Hochul and New York City Mayor Eric Adams—in support of then-presidential candidate Kamala Harris. The protest was organized to call attention to the demand that Vice President Harris and other elected officials call for a ceasefire in Gaza.

23.     The protest was peaceful.

24.     Several hours later, after the New York City Kickoff event ended, some of the protestors began to leave. Others walked a few blocks to continue their peaceful demonstration outside the restaurant Bird in Hand at Broadway and West 146th Street, where the protestors had learned some of the Kickoff event attendees had gone for a post-fundraiser afterparty.

---

[2] NYPD, *Arrests - Religious Head Covering Guidelines, in* Patrol Guide, 351–54, https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide1.pdf (last accessed Aug. 9, 2024) ("NYPD Religious Head Covering Policy").

25.     Police officers who had been outside the Kickoff event moved with the protestors to Bird in Hand. Many more police officers arrived at the restaurant. The police presence was overwhelming.

26.     Soon after the protestors and police gathered near Bird in Hand, NYPD officers, including strategic response group ("SRG") officers on bicycles, began kettling protestors. The police surrounded the protestors on all sides and began to shout "move back" while pushing protestors with their bodies and their bicycles.

27.     The police pepper sprayed several protestors and hit others and members of the media with batons.

### SRG Sergeant Spalding Attacks Ms. Howlader

28.     After police began kettling protestors outside the restaurant, Ms. Howlader was on the outer edges of protestors, making her an easy and visible target for the SRG officers, particularly as the only person wearing a hijab in the vicinity where she stood.

29.     Ms. Howlader is a second-year computer science student at Muhlenberg College in Pennsylvania. During her summer break, Ms. Howlader came home to Jamaica, Queens, where she grew up, to stay with her family.

30.     Both while at school and once home for the summer in New York City, Ms. Howlader attended several protests. And, on August 14, 2024, she attended the Harlem protest.

31.     Although protestors had nowhere to move because the police, who had surrounded them from all sides, had crowded them into a small area of the sidewalk, the police continued to yell at them to "back away" and push them back. Ms. Howlader tried to tell the police officers closest to her that she could not move back because there was no further place she could go; they were simply too crowded. Assistant Chief Stephenson did not care that there was nowhere else to go. He forcefully pushed Ms. Howlader back.

32.     Sergeant Spalding stood directly in front of Ms. Howlader, blank-faced, as she continued to plead with him and the other officers that there was nowhere for them to go. Out of nowhere, Sergeant Spalding grabbed the end of Ms. Howlader's hijab and—looking her directly in the eye—yanked.

33.     The force pulled Ms. Howlader's hijab halfway off her head, where it then tangled around her neck. Ms. Howlader had secured her hijab over her hair with an undercap that tied tightly around her head and several pins connecting that undercap to the fabric of her hijab scarf and to her clothes.[3] That meant that the more that Sergeant Spalding pulled, the tighter and tighter that the fabric of the hijab wound around Ms. Howlader's throat, cutting off her ability to breathe.

34.     Ms. Howlader tried to use her hands to cover her exposed hair and screamed with whatever breath she could, "my hijab, no my hijab! Let go!" and "I can't breathe!" Sergeant Spalding continued to stare blank-faced at her and did not loosen his tight-fisted clutch of Ms. Howlader's hijab.

35.     Eventually, other protestors were able to pull the end of Ms. Howlader's hijab out of Sergeant Spalding's hand and pull Ms. Howlader behind them so that she was no longer directly in front of Sergeant Spalding and the other officers.

36.     Ms. Howlader had been in so much pain from Sergeant Spalding's stranglehold on her hijab that, until the protestors were able to shield her, she had not realized that Police Officer John Doe #1 had also pepper sprayed her. The other protestors began pouring water into Ms. Howlader's eyes and gave her space to refasten her hijab.

37.     The NYPD did not arrest Ms. Howlader.

---

[3] An undercap is a stretchy lightweight fabric head covering worn underneath the hijab to keep the hijab fabric from slipping in order to ensure the fabric stays in place and provides continuing coverage over the wearer's hair.

38.     Police Officers John Doe #2–5 witnessed Assistant Chief Stephenson push Ms. Howlader, Sergeant Spalding pull off Ms. Howlader's hijab, and Police Officer John Doe #1 pepper spray Ms. Howlader, but they failed to intervene or take any steps to protect Ms. Howlader's rights.

39.     Ms. Howlader has suffered extreme trauma from Assistant Chief Stephenson's conduct. She went home minutes after she was freed, body aching and scalp full of pain.

40.     She has been unable to properly sleep since, suffered flashbacks to the incident, and spent two weeks too afraid to leave her house. She is no longer comfortable in crowds and social gatherings. She described the experience as completely traumatizing and degrading.

41.     Ms. Howlader filed a notice of claim on November 12, 2024.

42.     No hearing pursuant to Section 50-H of the General Municipal Law was scheduled within the statutory 90-day period, which expired on February 10, 2025.

43.     This action was commenced within one year and ninety days of the events upon which the claims are based.

### *Assistant Chief Stephenson Attacks Ms. Azam*

44.     At the same time as Ms. Howlader was being attacked, another protester, Ms. Azam was in the same area of the protest near Bird in Hand.

45.     Ms. Azam is a third-year biomedical science student at Mercy University in Dobbs Ferry, New York.

46.     Over the last year, Ms. Azam has been to several dozen protests. And, on August 14, 2024, she went to the protest in Harlem.

47.     Shortly after Ms. Azam joined the other protestors outside the restaurant, she noticed Assistant Chief Stephenson walk near the cluster of people with whom she was standing and then pause to observe the protestors. He suddenly spun around, pushed his way through

several other members of the crowd, and yelled directly at Ms. Azam, "Don't put your hands on me!" Assistant Chief Stephenson had not walked next to Ms. Azam, and Ms. Azam had not touched him, so she did not understand why he had singled her out. As is visible in the video of the incident, to reach Ms. Azam, Assistant Chief Stephenson had to fight through several other people who stood between him and Ms. Azam. Ms. Azam was the only person in a hijab nearby.

48.     Assistant Chief Stephenson grabbed Ms. Azam's hijab at her throat, threw her to the ground, and began pulling—strangling her with the scarf.

49.     With one hand, Assistant Chief Stephenson kept a stranglehold on the hijab at Ms. Azam's throat, and with the other he began to swing his baton at protestors for several minutes.

50.     All of this is on video. In the screenshots below, blue circles show where Assistant Chief Stephenson used his right hand to swing his baton at protestors, and red circles show where he kept ahold of Ms. Azam's throat with his other hand:

 



51.    Ms. Azam thought she would die.

52.    She tried to say, "my hijab, my hijab," but it was difficult to talk because Assistant Chief Stephenson's stranglehold was cutting off her ability to breathe.

53.    Assistant Chief Stephenson's stranglehold eventually pulled her hijab completely off her head until it hung around her neck.

54.    Police Officer John Doe #6 then took over and moved to arrest Ms. Azam. During that arrest, Police Officer John Doe #6 continuously pulled up Ms. Azam's shirt, and when Ms. Azam tried to stop him, he told Ms. Azam to stop resisting.

55.    Police Officer John Doe #6 then took custody of Ms. Azam and brought her to a vehicle where other arrestees were being taken. An officer took a picture of Ms. Azam, without her hijab on, with his cell phone. He did not take a picture with his cellphone of the male arrestee directly behind Ms. Azam.

56.     Police Officers John Doe #7–10 witnessed Assistant Chief Stephenson pull off Ms. Azam's hijab and Police Officer John Doe #6 pull up Ms. Azam's shirt while arresting her, but they failed to intervene or take any steps to protect Ms. Azam's rights.

57.     At no point before, during, or after this encounter did any officer give an order to disperse.

58.     Ms. Azam asked to have her hijab adjusted so that she could re-secure it around her hair, but the officers ignored Ms. Azam's pleas. Instead, an officer pushed her and told her to shut up.

59.     Ms. Azam was brought to a police precinct and kept there for an extended period of time, during which time she was never allowed to readjust her hijab. One female officer told Ms. Azam that she could not adjust the hijab because the scarf was caught in Ms. Azam's handcuffs, which the officer refused to remove. Instead, the officer threw part of the scarf on Ms. Azam's face—still leaving her hair uncovered.

60.     When Ms. Azam was finally placed in a holding cell and uncuffed, the first thing she did was try to refasten her hijab to cover her hair. But the scarf had been ripped in several places, and it therefore could not cover her properly.

61.     Ms. Azam was released around midnight with desk appearance tickets for Disorderly Conduct pursuant to §§ 240.20(1) and 240.20(6), which, respectively, criminalize "engag[ing] in fighting or in violent, tumultuous or threatening behavior" and "congregat[ing] with other persons in a public place and refus[ing] to comply with a lawful order of the police to disperse."

62.     Both tickets were dismissed.

63.     Ms. Azam suffered significant bruising and physical injuries from the incident.

64.    For a week after August 14, she was in significant physical pain, which prevented her from being able to eat, sleep, or even talk.

65.    Ms. Azam felt humiliated and sexually violated from having so many male officers and protestors ogle at her without her hijab on, and from having pictures and videos of her encounter with Assistant Chief Stephenson, during which her hijab had been ripped off, made public.

66.    Ms. Azam also has suffered changes in her mood and behavior, flashbacks, and other mental health concerns from the trauma of the incident.

67.    Ms. Azam filed a notice of claim on November 12, 2024.

68.    No hearing pursuant to Section 50-H of the General Municipal Law was scheduled within the statutory 90-day period, which expired on February 10, 2025.

69.    This action was commenced within one year and ninety days of the events upon which the claims are based.

***Ms. Howlader and Ms. Azam Were Not the Only Women Who Have Had Their Hijabs Ripped Off by NYPD Officers at Protests***

70.    In the last several months, several other women, in addition to Ms. Howlader and Ms. Azam, have reported that NYPD officers aggressively and intentionally tore off these women's hijabs when they attended protests.

71.    At least five other women have met with CAIR-NY to discuss their own experiences at protests—both at the same August 14, 2024 protest and at other distinct events— where NYPD officers pulled off their hijabs violently and publicly, leaving them with significant physical and emotional injuries. In some instances, the NYPD thereafter also took photos of the women while they were uncovered.

72.    These women also informed CAIR-NY that they knew of other women who likewise had their hijabs ripped off at protests by the NYPD.

73.    Upon information and belief, many other women have reported stories like these—that NYPD officers tore off their hijabs. And while sometimes the hijab was removed while effectuating an arrest, on at least some occasions, officers removed women's hijabs where no arrest was ever made, before the officer initiated an arrest, or long after the woman had already been arrested and handcuffed.

74.    These accounts support the conclusion that NYPD officers have a practice of removing women's hijabs at protests as a means of crowd control and intimidation, chilling the exercise of their free speech rights.

75.    Both to the women who have their hijabs removed and those who witness these removals—whether they themselves wear hijab or not—the NYPD's practice has had the effect of deterring them from engaging in First Amendment protected activity that they would otherwise engage in, but for fear of unconstitutional behavior by the NYPD.

76.    These women are afraid to attend protests for fear that they will exercise one First Amendment right—free speech—at the expense of another First Amendment right—the free exercise of their religion through the wearing of the hijab.

### CAIR-NY Is the First Line of Defense for the Muslim Community in New York

77.    CAIR-NY has long served as a frontline responder to abuses of the civil rights of New York's Muslim community.

78.    CAIR-NY is the New York state affiliate for the Council on American-Islamic Relations, the country's largest Muslim civil rights organization. It is a grassroots legal advocacy organization that partners with a broad coalition of allies to amplify the voices of Muslims against discrimination and tackle urgent issues like discriminatory policing and surveillance.

14

79.    The NYPD's practice of tearing off protestors' hijabs impairs and interferes with CAIR-NY's ability to protect the civil rights of New York's Muslim population and empower them. The NYPD's policy has frustrated CAIR-NY's efforts to assist freedom of religion and tolerance through counseling and other referral services. CAIR-NY has had to devote significant resources to identify and counteract the NYPD's religiously discriminatory practice.

80.    As part of its role as the first line of defense for New Yorkers experiencing civil rights abuses, CAIR-NY collects reports from individuals who have experienced religious bullying, harassment, hate crimes, housing or employment discrimination, religious profiling, and abusive interactions with law enforcement or government officials.

81.    Many of the women who have had their hijabs ripped off by the NYPD (including the Individual Plaintiffs) report the abuse to CAIR-NY—often as one of the first things they do after the incident.

82.    CAIR-NY reviews all reports it receives regarding civil rights abuses—including, but not limited to, reports of the NYPD ripping off women's hijabs as a method of crowd control—and counsels affected individuals regarding their legal rights, access to mental health and other support services, and strategies for responding to the abuse of their rights.

83.    Where individuals have viable legal claims, CAIR-NY's legal team, in connection with law firms, represents individuals facing, for instance, bullying and religious discrimination in schools, employment discrimination, hate crimes, law enforcement profiling and national security investigations, and other civil rights issues.

84.    CAIR-NY also works to protect Muslim New Yorkers' civil rights, including by meeting with elected officials, engaging with the media, protecting civic activism, organizing rallies and demonstrations, and testifying at public hearings.

85.    Over the last several months, CAIR-NY has fielded many inquiries from affected individuals, journalists, and other organizations committed to vindicating civil rights about the sharp spike in reports from Muslim New Yorkers that the NYPD tore off their hijabs at a protest. CAIR-NY has also published several press releases documenting this new NYPD policy and calling public attention to the resulting civil rights violations.

86.    CAIR-NY is also active in educating New York's Muslim community through the dissemination of informational materials and the provision of Know Your Rights workshops and other trainings.

87.    Since the proliferation of incidents in which the NYPD has torn off women's hijabs as a method of crowd control, CAIR-NY has begun to incorporate information concerning the incidents into its Know Your Rights trainings concerning protestor rights.

88.    The NYPD's practice of tearing off protestors' hijabs impairs CAIR-NY's ability to carry out its mission in several other significant ways.

89.    For instance, the NYPD's behavior undermines CAIR-NY's ability to defend hate crime victims. When those victims are afraid of the police—the individuals who would be responsible for protecting those victims' rights, investigating the crimes, and helping to prosecute the offenders—hate crime victims go without justice.

90.    Likewise, CAIR-NY's goals to empower Muslims to exercise their First Amendment rights and to defend religious liberty are thwarted when the NYPD chills those same rights.

91.    The NYPD practice of forcibly removing religious head coverings as a form of protester intimidation chills First Amendment rights, and that interference with First Amendment rights impairs CAIR-NY's ability to support, promote, and amplify speech about Islam and

Muslim rights, as well as its ability to empower Muslim communities to enjoy their full panoply

of rights and freedoms under the U.S. and New York constitutions.

## FIRST CAUSE OF ACTION
Free Exercise Clause
(42 U.S.C. § 1983, First and Fourteenth Amendments of the U.S. Constitution)
By All Plaintiffs Against Assistant Chief Stephenson, Sergeant Spalding, and Police Officers
John Doe #1–10

92.    Plaintiffs repeat and reallege the above paragraphs as if the same were fully set

forth at length herein.

93.    42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or

usage to deprive a citizen of rights secured by the U.S. Constitution.

94.    At all relevant times, Assistant Chief Stephenson, Sergeant Spalding, and Police

Officers John Doe #1–10 acted under color of state law.

95.    Under the First Amendment to the Constitution of the United States of America,

Plaintiffs have the right to freely exercise their religion.

96.    By forcibly removing Ms. Azam and Ms. Howlader's hijabs in public, Assistant

Chief Stephenson and Sergeant Spalding deprived them of their right to freely exercise their

religion, in contravention of the Free Exercise Clause.

97.    Police Officers John Doe #1–10 failed to intervene and prevent the harm to

Individual Plaintiff's constitutional rights.

98.    This conduct directly and proximately impaired CAIR-NY's ability to fulfill its

mission, empower Muslims to exercise their First Amendment rights, and defend religious

liberty.

99.    As a direct and proximate result of the unlawful discriminatory conduct of

Assistant Chief Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10, Plaintiffs

have sustained damages, and they suffered and continue to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## SECOND CAUSE OF ACTION
Free Exercise Clause
(N.Y. State Constitution, Art. I, § 3)
By Individual Plaintiffs, Against All Defendants

100.    Individual Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

101.    Article I, Section 3 of the Constitution of the State of New York provides that: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind."

102.    Assistant Chief Stephenson and Sergeant Spalding violated Article I, Section 3 when they forcibly publicly removed Ms. Azam and Ms. Howlader's hijabs by disallowing their free exercise of religion.

103.    Police Officers John Doe #1–10 failed to intervene and prevent the harm to Individual Plaintiff's constitutional rights.

104.    Defendant City of New York, as employer of Assistant Chief Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

105.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Individual Plaintiffs have sustained the damages herein alleged.

## THIRD CAUSE OF ACTION
Unreasonable Seizure
(42 U.S.C. § 1983, Fourth and Fourteenth Amendments of the U.S. Constitution)
By Individual Plaintiffs, Against Assistant Chief Stephenson, Sergeant Spalding, and Police
Officers John Doe #1–10

106.    Individual Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

107.    The Fourth Amendment protects against "unreasonable searches and seizures." It thus prohibits police officers from stopping individuals without, at minimum, reasonable suspicion. *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016). The application of physical force against an individual to restrain their movement constitutes a Fourth Amendment seizure and can therefore only be constitutionally justified if the officer had at least reasonable suspicion. *Salmon v. Blesser*, 802 F.3d 249, 252 (2d Cir. 2015) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

108.    Assistant Chief Stephenson and Sergeant Stephenson applied force against Individual Plaintiffs when they pulled on their hijabs, cutting off their ability to breathe let alone move away.

109.    Assistant Chief Stephenson and Sergeant Spalding lacked any reasonable suspicion to enact a Fourth Amendment seizure, however, rendering their actions unconstitutional. Individual Plaintiffs were merely standing peaceably in the crowd outside the restaurant, exercising their constitutionally protected right to participate in protest. They were not engaged in any criminal behavior.

110.    Police Officers John Doe #1–10 failed to intervene and prevent the harm to Individual Plaintiff's constitutional rights.

111.    At all relevant times, Assistant Chief Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10 acted under color of state law.

112.    As a direct and proximate result of Defendants' unconstitutional conduct,

Individual Plaintiffs have sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
Unlawful Seizure
(N.Y. State Constitution, Art. I, § 21)
By Individual Plaintiffs, Against All Defendants

113.    Individual Plaintiffs repeat and reallege the above paragraphs as if the same were

fully set forth at length herein.

114.    Article I, Section 12 of the Constitution of the State of New York protections

against unreasonable searches and seizures. It therefore requires that officers have at least

reasonable suspicion before applying physical force against an individual to restrain their

movement. *See Santander Consumer USA, Inc. v. City of Yonkers*, No. 20-cv-4553 (KMK), 2022

U.S. Dist. LEXIS 164416, at *25 (S.D.N.Y. Sep. 12, 2022).

115.    Assistant Chief Stephenson and Sergeant Spalding applied force against

Individual Plaintiffs when they pulled on their hijabs, cutting off their ability to breathe let alone

move away.

116.    Assistant Chief Stephenson and Sergeant Spalding lacked any reasonable

suspicion to enact a seizure, however, and they thus violated Article I, Section 12. Individual

Plaintiffs were merely standing peaceably in the crowd outside the restaurant, exercising their

constitutionally protected right to participate in protest. They were not engaged in any criminal

behavior.

117.    Police Officers John Doe #1–10 failed to intervene and prevent the harm to

Individual Plaintiff's constitutional rights.

118.    Defendant City of New York, as employer of Assistant Chief Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

119.    As a direct and proximate result of Defendants' unconstitutional conduct, Individual Plaintiffs have sustained the damages herein alleged

### FIFTH CAUSE OF ACTION
Excessive Force
(42 U.S.C. § 1983, Fourth and Fourteenth Amendments of the U.S. Constitution)
By Individual Plaintiffs, Against Defendant Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10

120.    Individual Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

121.    By reason of the foregoing and by pulling on Ms. Howlader's and Ms. Azam's hijabs, Assistant Chief Stephenson and Sergeant Spalding used unreasonable and excessive force under the circumstances they confronted.

122.    Sergeant Spalding was not arresting Ms. Howlader; she did not pose any threat to his safety or anyone else's; she made no sudden movements; and she was unarmed. Sergeant Spalding had no cause to use *any* force to restrain Ms. Howlader. But even if use of some force was warranted, choking Ms. Howlader with her hijab and pulling it off her head was unreasonable and excessive.

123.    Police Officer John Doe #1 also used excessive force against Ms. Howlader when he pepper sprayed her.

124.    Likewise, Ms. Azam did not pose any threat to Assistant Chief Stephenson's safety or anyone else's; she made no sudden movements; and she was unarmed. Although Assistant Chief Stephenson did arrest Ms. Azam, the degree of force used—grabbing Ms. Azam

in a stranglehold for several minutes, swinging her around by her hijab, and ultimately pulling

off her hijab—was unreasonable and excessive.

125.    Police Officer John Doe #6 also used excessive force in arresting Ms. Azam when

he continued to lift up her shirt.

126.    Assistant Chief Stephenson, Sergeant Spalding, and Police Officer John Doe #6

acted beyond the scope of their jurisdiction, without authority of law, and in abuse of their power

to willfully, knowingly, and intentionally deprive Individual Plaintiff s of their constitutional

rights secured by 42 U.S.C. § 1983 and by the Fourth and Fourteenth Amendments of the U.S.

Constitution.

127.    Police Officers John Doe #2–5 and 7–10 failed to intervene and prevent the harm

to Individual Plaintiff's constitutional rights.

128.    At all relevant times, Assistant Chief Stephenson, Sergeant Spalding, and Police

Officers John Doe #1–10 acted under color of state law within the scope of his employment as a

police officer for the NYPD.

129.    As a direct and proximate result of the officers' misconduct detailed above,

Individual Plaintiffs sustained the damages herein alleged.

**SIXTH CAUSE OF ACTION**
Excessive Force
(N.Y. State Constitution, Art. I, § 21)
By Individual Plaintiffs, Against All Defendants

130.    Individual Plaintiffs repeat and reallege the above paragraphs as if the same were

fully set forth at length herein.

131.    Article I, Section 12 of the Constitution of the State of New York protections

against unreasonable searches and seizures.

132.    Assistant Chief Stephenson and Sergeant Spalding violated Article I, Section 12 when they pulled on Ms. Howlader's and Ms. Azam's hijabs, which constituted the use of unreasonable and excessive force under the circumstances they confronted.

133.    Sergeant Spalding was not arresting Ms. Howlader; she did not pose any threat to his safety or anyone else's; she made no sudden movements; and she was unarmed. Sergeant Spalding had no cause to use *any* force to restrain Ms. Howlader. But even if use of some force was warranted, choking Ms. Howlader with her hijab and pulling it off her head was unreasonable and excessive.

134.    Police Officer John Doe #1 also used excessive force against Ms. Howlader when he pepper sprayed her.

135.    Likewise, Ms. Azam did not pose any threat to Assistant Chief Stephenson's safety or anyone else's; she made no sudden movements; and she was unarmed. Although Assistant Chief Stephenson did arrest Ms. Azam, the degree of force used—grabbing Ms. Azam in a stranglehold for several minutes, swinging her around by her hijab, and ultimately pulling off her hijab—was unreasonable and excessive.

136.    Police Officer John Doe #6 also used excessive force in arresting Ms. Azam when he continued to lift up her shirt.

137.    Police Officers John Doe #2–5 and 7–10 failed to intervene and prevent the harm to Individual Plaintiff's constitutional rights.

138.    Defendant City of New York, as employer of Assistant Chief Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

139.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Individual Plaintiffs have sustained the damages herein alleged.

**SEVENTH CAUSE OF ACTION**
Free Speech Violation
(42 U.S.C. § 1983, First and Fourteenth Amendments of the U.S. Constitution)
By All Plaintiffs Against Defendant Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10

140.    Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

141.    Under the First Amendment to the Constitution of the United States of America, Plaintiffs have the right to free speech, including the right to participate in protests and demonstrations without fear of arrest or assault by any police officer.

142.    Individual Plaintiffs were engaging in a protest on August 14, 2024, a protected First Amendment activity.

143.    By forcibly removing Ms. Azam and Ms. Howlader's hijabs in public while they attended the protest, Assistant Chief Stephenson and Sergeant Spalding deprived them of their right to freely exercise their First Amendment rights, in contravention of the Free Speech Clause.

144.    Police Officers John Doe #1–10 failed to intervene and prevent the harm to Individual Plaintiff's constitutional rights.

145.    At all relevant times, Assistant Chief Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10 acted under color of state law.

146.    This conduct directly and proximately impaired CAIR-NY's ability to fulfill its mission, empower Muslims to exercise their First Amendment rights, and defend religious liberty.

147.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Individual Plaintiffs have sustained the damages herein alleged.

## EIGHTH CAUSE OF ACTION
Free Speech Violation
(N.Y. State Constitution, Art. I, § 8)
By Individual Plaintiffs, Against All Defendants

148.     Individual Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

149.     Article I, Section 8 of the Constitution of the State of New York provides that "[e]very citizen may freely speak . . . her sentiments on all subjects, being responsible for the abuse of that rights; and no law shall be passed to restrain or abridge the liberty of speech."

150.     Individual Plaintiffs were engaging in a protest on August 14, 2024, an activity protected by Article I, Section 8 of the New York Constitution.

151.     By forcibly removing Ms. Azam and Ms. Howlader's hijabs in public while they attended the protest, Assistant Chief Stephenson and Sergeant Spalding deprived them of their right to freely exercise their free speech rights under Article I, Section 8 of the New York Constitution.

152.     Police Officers John Doe #1–10 failed to intervene and prevent the harm to Individual Plaintiff's constitutional rights.

153.     At all relevant times, Assistant Chief Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10 acted under color of state law.

154.     Defendant City of New York, as employer of Assistant Chief Stephenson, Sergeant Spalding, and Police Officers John Doe #1–10, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

155.     As a direct and proximate result of Defendants' unlawful discriminatory conduct, Individual Plaintiffs have sustained the damages herein alleged.

## NINTH CAUSE OF ACTION
False Arrest
(42 U.S.C. § 1983, Fourth and Fourteenth Amendments of the U.S. Constitution)
By Plaintiff Azam, Against Defendant Stephenson and Police Officer John Doe #6

156.    Plaintiff Azam repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

157.    Assistant Chief Stephenson and Police Officer John Doe #6 wrongfully and illegally arrested Ms. Azam.

158.    The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Ms. Azam was carried out without any basis, without Ms. Azam's consent, and without probable cause or reasonable suspicion.

159.    As visible in the bystander video in which Assistant Chief Stephenson suddenly and without prompting whirls around, pushes through the crowd to single out Ms. Azam, and grabs her by the throat, Ms. Azam was not engaging in any fighting or in any violent, tumultuous, or threatening behavior. No order to disperse had been given. She was standing still and witnessing the protest.

160.    No reasonable officer would have believed there was probable cause to arrest Ms. Azam under these circumstances.

161.    At all relevant times, Assistant Chief Stephenson and Police Officer John Doe #6 acted forcibly in apprehending and arresting Ms. Azam.

162.    Ms. Azam was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, and falsely charged. At all times, the unlawful, wrongful, and false arrest of Ms. Azam was without basis and without probable cause or reasonable suspicion.

163.    All charges against Ms. Azam were dismissed.

164.    All this occurred without any fault or provocation on the part of Ms. Azam.

165.    Assistant Chief Stephenson and Police Officer John Doe #6 acted under pretense and color of state law. Said acts by him were beyond the scope of his jurisdiction, without authority of law, and in abuse of his power, and Assistant Chief Stephenson and Police Officer John Doe #6 acted willfully, knowingly, and with the specific intent to deprive Ms. Azam of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

166.    Assistant Chief Stephenson's and Police Officer John Doe #6's conduct was willful, wanton, and reckless.

167.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Azam sustained the damages herein alleged.

**TENTH CAUSE OF ACTION**
Common Law False Arrest/False Imprisonment
By Plaintiff Azam, Against Assistant Chief Stephenson, Police Officer John Doe #6, and the
City of New York

168.    Plaintiff Azam repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

169.    Assistant Chief Stephenson and Police Officer John Doe #6 wrongfully and illegally arrested Ms. Azam.

170.    The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Ms. Azam was carried out without any basis, without Ms. Azam's consent, and without probable cause or reasonable suspicion.

171.    As visible in the bystander video in which Assistant Chief Stephenson suddenly and without prompting whirls around, pushes through the crowd to single out Ms. Azam, and grabs her by the throat, Ms. Azam was not engaging in any fighting or in any violent,

tumultuous, or threatening behavior. No order to disperse had been given. She was standing still and witnessing the protest.

172.    No reasonable officer would have believed there was probable cause to arrest Ms. Azam under these circumstances.

173.    At all relevant times, Assistant Chief Stephenson and Police Officer John Doe #6 acted forcibly in apprehending and arresting Ms. Azam.

174.    Ms. Azam was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of her liberty, and falsely charged. At all times, the unlawful, wrongful, and false arrest of Ms. Azam was without basis and without probable cause or reasonable suspicion.

175.    All charges against Ms. Azam were dismissed.

176.    All this occurred without any fault or provocation on the part of Ms. Azam.

177.    Assistant Chief Stephenson and Police Officer John Doe #6 acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of Ms. Azam's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards Ms. Azam.

178.    Defendant City of New York, as employer of Assistant Chief Stephenson and Police Officer John Doe #6, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

179.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Ms. Azam sustained the damages herein alleged.

## ELEVENTH CAUSE OF ACTION
Common Law Battery
By Individual Plaintiffs, Against Assistant Chief Stephenson, Sergeant Spalding, and Police
Officer John Doe #1, and the City of New York

180.    Individual Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

181.    By reason of the foregoing, Assistant Chief Stephenson and Sergeant Spalding acting in their capacity as NYPD officers and within the scope of their employment as such, intentionally pulled on Individual Plaintiffs' religious head coverings and thereby restricted their breathing, which constitutes a willful, unlawful, unwarranted, and intentional battery upon Individual Plaintiffs.

182.    Police Officer John Doe #1, acting in his capacity as an NYPD officer and within the scope of his employment as such, pepper sprayed Ms. Howlader, which constitutes a willful, unlawful, unwarranted, and intentional battery upon Ms. Howlader.

183.    The batteries committed by Assistant Chief Stephenson, Sergeant Spalding, and Police Officer John Doe #1 were unnecessary and unwarranted in the performance of their duties as NYPD officers and constituted an unreasonable and excessive use of force.

184.    Defendant City of New York, as the employer of Assistant Chief Stephenson, Sergeant Spalding, and Police Officer John Doe #1, is liable for their use of excessive force against Individual Plaintiffs under the doctrine of *respondeat superior*.

185.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Individual Plaintiffs sustained the damages herein alleged.

## TWELFTH CAUSE OF ACTION
Declaratory Judgment
(Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-02)
By All Plaintiffs, Against All Defendants

186.    Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

187.    The NYPD's practice of forcibly and publicly removing women's hijabs at protests violates these women's constitutional rights, including their religious rights, free speech rights, rights to bodily integrity, and protections against unreasonable seizures or force.

188.    Assistant Chief Stephenson's, Sergeant Spalding's, and Police Officers John Doe #1–10's conduct—and, vicariously, the City's—was intentional and made with reckless indifference to Individual Plaintiffs' constitutional rights.

189.    Defendants' conduct infringed upon and substantially burdened Individual Plaintiffs' rights.

190.    Defendants' conduct also impeded CAIR-NY's ability to fulfill its mission and conduct its core activities.

191.    Defendants' practice of forcibly removing religious head coverings in public, including the hijabs worn by Ms. Azam and Ms. Howlader, is an unlawful and unconstitutional practice that infringes upon the rights of Individual Plaintiffs and other Muslim women and religious adherents to freely exercise their religion and their free speech rights without the interference of substantially burdensome government conduct. It also interferes with their bodily integrity insofar as it violates their rights against unreasonable seizures, excessive force, and unwanted touching.

192.    Defendants' policy, practice, and custom caused and continue to cause harm to Plaintiffs and other Muslim women and religious adherents.

193.    Plaintiffs are entitled to a declaratory judgment that Defendants infringed upon and substantially burdened Plaintiffs' constitutional rights and continue to substantially burden the religious free exercise, free speech, and bodily integrity of other Muslim women and religious adherents in violation of federal and state law and the United States Constitution.

194.    Plaintiffs are further entitled to a declaratory judgment that the NYPD is never permitted to forcibly and publicly remove women's hijabs, as a method of crowd control at a protest, or for any other reason.

195.    Plaintiffs have a strong likelihood of succeeding on the merits of their claims.

*** 

WHEREFORE, Plaintiffs CAIR-NY, Zarmeen Azam, and Shajnin Howlader respectfully request judgment against Defendants as follows:

a)    Awarding such damages to Plaintiffs Azam and Howlader as will fully compensate them for their loss of rights, physical injuries, and emotional distress suffered due to Defendants' unlawful conduct;

b)    Awarding such damages to CAIR-NY as will fully compensate it for its frustration of mission and impairment of its ability to pursue mission-related core activities suffered due to Defendants' unlawful conduct;

c)    Declaring that Defendants' discriminatory practices violate the Free Exercise and Free Speech Clauses of the First Amendment to the United States Constitution; the Fourth Amendment to the United States Constitution; and Article I, Sections 3, 8, and 21 of the New York State Constitution;

d) Enjoining the City, its agents, employees, and successors, and all other persons in active concert or participation with the City from removing religious head or hair coverings as a method of crowd control at a protest;

e) Requiring the City to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees in the future;

f) Awarding punitive damages to all Plaintiffs;

g) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

h) Granting Plaintiff such other further relief as may be just and proper.

Dated: New York, New York
        March 9, 2025

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By: ____/s/_____
        O. Andrew F. Wilson
        Hafsa S. Mansoor
        600 Fifth Avenue, 10th Floor
        New York, New York 10020
        (212) 763-5000

*Attorneys for Plaintiffs*